IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

AVIS LEE SMITH,

        Plaintiff,

    vs.

MICHAEL J. ASTRUE, Commissioner
of Social Security,

        Defendant.

Civil Action 2:11-CV-769
Judge Watson
Magistrate Judge King

**REPORT AND RECOMMENDATION**

**I.**
**Introduction and Background**

      This is an action instituted under the provisions of 42
U.S.C. §405(g) for review of a final decision of the Commissioner
of Social Security denying plaintiff's applications for disability
insurance benefits and supplemental security income. This matter is
now before the Court on plaintiff's *Statement of Errors*, Doc. No.
12 and the Commissioner's *Memorandum in Opposition*, Doc. No. 15.

      Plaintiff Avis Lee Smith filed her applications for
benefits on May 15, 2007, alleging that she is disabled as a result
of degenerative joint disease, fluid in both knees, diabetes,
congestive heart failure and "factc" disease (facet arthropathy).[1]
*PAGEID* 304. The applications were denied initially and upon
reconsideration, and plaintiff requested a *de novo* hearing before
an administrative law judge.

      A hearing was held on March 31, 2010, at which plaintiff,
represented by counsel, appeared and testified, as did Steven S.
Rosenthal, who testified as a vocational expert. In a decision

---

[1] Plaintiff originally claimed a disability onset date of December 5,
2005.  At the administrative hearing, plaintiff amended that onset date to
April 30, 2007.  *PAGEID* 68.

dated June 30, 2010, the administrative law judge found that, despite plaintiff's severe exertional impairments, which preclude the performance of her prior relevant work, plaintiff can nevertheless perform a significant number of jobs in the national economy. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 120-21. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 24, 2011. *PAGEID* 56-60.

Plaintiff was 53 years of age at the time the administrative law judge issued his decision. She has a high school education and past relevant work experience as a phlebotomist and a medical assistant. *PAGEID* 90-91.

## II.

### Plaintiff's Testimony

Plaintiff suffered a work-related back injury on February 2, 2007. *PAGEID* 71-72. She has experienced chronic lower back pain since that time. *PAGEID* 72. The pain is "nagging," achy, sometimes sharp and radiates to the hips. *PAGEID* 73. She takes medication, injections and physical therapy for the pain. *PAGEID* 74. No physician had ever discussed or recommended surgery. *Id.* She also has problems with her upper back since 2005 and degenerative joint disease in both knees. *PAGEID* 75. Plaintiff also testified that she suffered a TIA in April 2008. *PAGEID* 77. Since that time, she has experienced paralysis in two fingers of her left hand, on the left side of her face and half of her tongue. *PAGEID* 78. She also suffers from diabetes, which causes blurriness and dehydration. *PAGEID* 79. Plaintiff also testified that she suffers from a bipolar disorder for which she takes Welbutrin. *PAGEID* 86. Her medications cause dizziness and sleepiness. *PAGEID* 85.

At the time of the hearing, plaintiff was working 28 hours per week as a telemarketer. *PAGEID* 75. She is able to wash

dishes, do laundry, cook, sew and sometimes go to the grocery store. *PAGEID* 81-82.

Plaintiff estimated that she can lift ten pounds. *Id.* She cannot remain in any one position for long; she must get up three or four times per night. *Id.* She must alternate between sitting and standing. She must arise from a seated position after 15 or 20 minutes, and she cannot stand longer than 15 or 20 minutes. *PAGEID* 80. She estimates that she can walk five to ten minutes. *PAGEID* 81.

### III.

### The Medical Evidence of Record.

Mary Ann Wynd, M.D., a specialist in occupational medicine, treated plaintiff from February 2007 to December 2007. *PAGEID* 413-30, 643-91. Initially, plaintiff reported a fall at work on February 2, 2007 which resulted in back and head pain which plaintiff rated at 8 on an analog pain scale. Plaintiff also complained of a frontal headache with associated nausea but no vomiting. She denied radicular symptoms in the upper and lower extremities. *PAGEID* 429-30. On clinical examination, Dr. Wynd noted tenderness to palpation in the right parietal region of the head with no palpable lump in that area, and tenderness to palpation in the right lumbosacral region. Range of motion in this area was limited. There was no cervical tenderness and range of motion was normal. Sensation and strength were normal in the bilateral upper and lower extremities. *Id.* Dr. Wynd diagnosed a concussion without loss of consciousness and a back contusion. *Id.* Plaintiff was referred to physical therapy, *PAGEID* 428, and aqua therapy. *PAGEID* 426.

A March 30, 2007 MRI of the lumbar spine showed a small synovial cyst at L4-L5 encroaching on the right lateral recess, probably L5. There was associated facet disease at that level, greater on the right side. The radiologist identified synovial joint fluid and a minor disc bulge at the L4-L5 level. *PAGEID* 443.

3

In June 2007, Dr. Wynd again noted tenderness to palpation in the lumbosacral region but findings were otherwise normal. *PAGEID*# 414-16. Dr. Wynd diagnosed a back contusion with persistent low back pain. *Id.* Dr. Wynd also referred plaintiff to the OSU Spine Center for evaluation and noted that plaintiff's pain "has persisted the past three months and is no longer simply due to a contusion." *Id*. Dr. Wynd limited plaintiff to lifting no more than 10 pounds and limited her to only occasional standing and walking and limited bending and twisting. *Id.*

Plaintiff was examined at the OSU Comprehensive Spine Center by Ahmad Elsharydah, M.D., who could not find "a clear etiology of her pain." *PAGEID* 439-42. Dr. Elsharydah noted complaints of S1 joint pain, much worse on the right than left, and weakness of the right leg. "Whether or not this is due to the synovial cyst we have seen on her MRI or just due to her not wanting to move her legs secondary to her pain in her S1 joint is unclear. Some of her other pain is likely due to her history of degenerative joint disease." *PAGEID* 441. Plaintiff was scheduled for spinal injections and an EMG nerve conduction study. *Id.*

State agency physician Jeffrey Vasiloff, M.D., reviewed the file in August 2007, *PAGEID* 571-78, and opined that plaintiff could lift and/or carry and push and/or pull up to 20 pounds occasionally and ten pounds frequently; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could occasionally balance, stoop, kneel, crouch, crawl and climb ramps/stairs; and could never climb ladders/ropes/scaffolds. *Id.* Dr. Vasiloff concluded that Dr. Wynd's June 2007 exertional limitations were not supported by the objective evidence. *PAGEID*# 577. Dr. Vasiloff's assessment was affirmed by another state agency physician, Diane Manos, M.D., in February 2008. *PAGEID* 713.

4

In February 2008, Dr. Wynd opined that plaintiff could lift/carry up to 20 pounds occasionally and 10 pounds frequently; could frequently stand/walk; could sit continuously; could occasionally bend, twist/turn, reach below the knee, and push/pull; but could never squat/kneel. *PAGEID* 694.

Plaintiff suffered a stroke on April 7, 2008 for which she was hospitalized for three days. *PAGEID* 919-26.

Plaintiff's treating family physician from June 2005 to at least April 2010 has been Holly Cronau, M.D. *PAGEID* 465-564, 601-41, 731-74, 778-835, 907-10. Dr. Cronau has treated plaintiff for diabetes, chest pain, depression, smoking cessation and hypertension. *Id.* On May 13, 2008, Dr. Cronau completed various disability forms on behalf of plaintiff, *PAGEID* 715-19, and opined that plaintiff could stand/walk for no more than two hours, for no more than fifteen minutes at a time; could lift no more than 10 pounds; and is moderately limited in her ability to push/pull and bend. *PAGEID* 716. From a mental standpoint, Dr. Cronau indicated, *inter alia*, that plaintiff was markedly impaired in her ability to perform activities within a schedule, to sustain an ordinary routine and to work in coordination with or proximity to others and to complete a normal workday and workweek without interruptions from psychologically based symptoms. *PAGEID* 717. According to Dr. Cronau, plaintiff was unemployable and would remain so for at least 12 months. *Id.* In April 2009, Dr. Cronau reaffirmed those physical limitations. *PAGEID* 913.

In September 2008, Brad W. DeSilva, M.D., an otolaryngologist, saw plaintiff for complaints of tinnitus and dizziness. *PAGEID* 861-64. According to Dr. DeSilva, plaintiff's "vertigo may be an early onset of Meniere's disease. However, her story is complicated due to her recent stroke." *PAGEID* 861. He referred plaintiff to vestibular rehabilitation. *Id.* In September 2009, Dr. DeSilva performed a flexible fiberoptic laryngoscopy for

complaints of a globus sensation in plaintiff's throat, a laryngeal
edema and laryngopharyngeal reflux. *PAGEID* 951-52. In March 2010,
Dr. Desilva diagnosed conduction hearing loss and chronic rhinitis.
*PAGEID* 948.

Rajaram J. Karne, M.D., an endocrinologist, saw plaintiff
in August 2008, upon referral by Dr. Cronau, for evaluation and
control of her diabetes. *PAGEID* 838-58. Plaintiff complained of
easy fatigue, night sweats, skin rashes, changes of the hair,
blurriness of vision, loss of smell, nasal obstruction, dental
problems, sputum, high blood pressure, changes in appetite,
heartburn, polyuria, reduced libido, muscle cramps, joint pain and
swelling, back pain and stiffness, headache, dizziness and
depression. Dr. Karne diagnosed diabetes mellitus, Type II,
uncontrolled. The doctor adjusted plaintiff's medications. *Id.*

Plaintiff was seen by a counselor at Hope Counseling
Center on April 15, 2009 for feelings of being overwhelmed with
psychosocial problems, including problems with her seventeen year
old son (who has mental impairments), a job injury and the
aftermath of a stroke. Plaintiff reported that she had sought work
for two years. She complained of frustration, anger control issues,
impatience and anxiety. Plaintiff was diagnosed with intermittent
explosive disorder, general anxiety disorder and a pain disorder.
Her Global Assessment of Functioning was rated 60. *PAGEID* 880. The
counselor declined to fill out a form assessment of plaintiff's
mental residual functional capacity supplied by plaintiff's
counsel. *PAGEID* 881.

## IV.

### Administrative Decision

In his decision, the administrative law judge found that
plaintiff's severe impairments consist of osteoarthritis, synovial
cyst of the lumbar spine, facet arthropathy and diabetes. *PAGEID*
114. The administrative law judge expressly found that plaintiff's

severe impairments did not include depression or severe functional limitations due to a stroke, reasoning that the objective medical evidence did not document such impairments. *PAGEID* 115. In considering, and rejecting, plaintiff's alleged severe mental impairments, the administrative law judge specifically found:

> There is no evidence the claimant was diagnosed with and/or received any treatment by a mental health professional prior to 2009 and then it was only well after the clamant had filed for disability and been initially denied. It is noteworthy that the claimant is consistently reported by treating physicians as not exhibiting any symptoms, mood, or behavior indicative of anxiety or depression. Indeed, the claimant is noted as denying that she does not [sic] have depression, anxiety, or mood swing.

*PAGEID* 115 (citations to record omitted).

The administrative law judge went on to find that plaintiff's impairments neither met nor equaled a listed impairment. *Id.* Relying on the opinions of Dr. Wynd and the state agency physicians, the administrative law judge found that plaintiff has the residual functional capacity to sit for a total of 6 hours in an 8 hour workday, to stand and walk for a total of 6 hours in an 8 hour workday, to lift 10 pounds frequently and 20 pounds occasionally and to climb stairs, balance, stoop, kneel, crouch, and crawl occasionally. She cannot climb ladders or ropes or work around hazardous machinery or unprotected heights. *PAGEID* 115-19. The administrative law judge "accorded little weight" to Dr. Cronau's May 2008 and April 2009 assessments, finding them "inconsistent with and unsupported by the diagnostic testing and longitudinal clinical evidence in the evidence of record." *PAGEID* 119.

The administrative law judge next found that this residual functional capacity precluded the performance of

plaintiff's past relevant work. *PAGEID* 120. Relying on the vocational expert's testimony, the administrative law judge found that plaintiff is nevertheless able to perform other work that exists in significant numbers in the national economy, including such jobs as information clerk, retail sales and retail marker. *PAGEID* 120-21. Accordingly, the administrative law judge concluded that plaintiff is not disabled within the meaning of the Social Security Act. *PAGEID* 121.[2]

## V.

## DISCUSSION

Pursuant to 42 U.S.C. §405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971). *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003); *Kirk v. Secretary of Health & Human*

---

[2]After the administrative law judge issued his unfavorable decision, plaintiff submitted additional materials to the Appeals Council, including medical records from The OSU Medical Center from August to November 2010; additional records from Dr. Wynd from 2009 and 2010; a psychological evaluation report dated July 15, 2010; a home health nurse report dated July 12, 2010; a December 17, 2010 MRI of the lumbar spine report; and treatment records from the Cleveland Clinic dated March 7, 2011. *Page ID* 1010-1314. Evidence submitted to the Appeals Council may not be considered by the District Court for purposes of substantial evidence review of the administrative law judge's decision. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *see also Cline v. Comm'r of Social Security,* 96 F.3d 146, 148 (6th Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey v. Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). Moreover, plaintiff does not explain why the evidence that pre-dated the administrative decision was not submitted to the administrative law judge. In any event, plaintiff does not ask for remand of the action pursuant to Sentence 6 of 42 U.S.C. § 405(g) for consideration of new and material evidence.

*Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would decide the matter differently, *Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028 (6th Cir. 1990)(citing *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983)), and even if substantial evidence also supports the opposite conclusion. *Longworth*, 402 F.3d at 595.

In her *Statement of Errors*, plaintiff presents four arguments. She contends, first, that the administrative law judge erred in rejecting Dr. Cronau's assessment of plaintiff's residual functional capacity and in failing to address the treatment and reports of plaintiff's numerous other treating physicians. Plaintiff next contends that the administrative law judge incorrectly assessed plaintiff's credibility by failing to consider plaintiff's work history. Third, plaintiff argues that the administrative law judge erred in relying on the testimony of the vocational expert because the hypothetical posed to the expert – which did not include any mental impairments – was flawed. Finally, plaintiff contends the administrative law judge misapplied the Medical Vocational Guidelines ("Grid").

This Court concludes that the administrative law judge mischaracterized the record relating to plaintiff's mental health treatment and failed to properly consider – or indeed even mention – Dr. Cronau's assessment of plaintiff's diagnosed mental impairments. The Court therefore concludes that the decision of the Commissioner cannot be affirmed and that remand of the action

is warranted. Under these circumstances, the Court need not and does not resolve the other issues raised in plaintiff's *Statement of Errors*.

The administrative law judge considered, and rejected, Dr. Cronau's assessment of plaintiff's physical capacity, relying instead on the February 2008 assessment of Dr. Wynd, another of plaintiff's treating physicians, and on the assessments of the state agency physicians. However, the administrative law judge failed to even consider Dr. Cronau's May 2008 assessment of plaintiff's mental capacity, which indicated that plaintiff was markedly impaired in a number of work-related areas. Perhaps this oversight flowed from the administrative law judge's finding that plaintiff does not suffer a severe mental impairment. According to the administrative law judge, there was no diagnosis or treatment of any mental impairment by a mental health professional prior to 2009. *PAGEID* 115. Even if this were true, however, that fact alone would not excuse the administrative law judge from further considering whether and to what extent that diagnosis and treatment affected plaintiff's ability to engage in work-related activities.

In any event, however, the administrative law judge's characterization of the record in this regard is inaccurate. Dr. Cronau's treatment records include a diagnosis of depression as far back as 2005. See, *e.g.*, *PAGEID* 477-78 ( "Depression - stable [with] meds"); *PAGEID* 523 (Wellbutrin prescribed for depression). Moreover, the administrative law judge was required to consider the opinions of plaintiff's treating physician, Dr. Cronau, regarding her patient's mental impairments. Even if the administrative law judge found that those opinions were not entitled to controlling weight, he was still obligated to evaluate those opinions by reference to the standards of 20 C.F.R. §§ 404.1527(d)(2) - (6), 416.927(d)(2) - (6); *see Blakley v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009), and to give good reasons for the

10

weight accorded to those opinions. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 242 (6th Cir. 2007), citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5. It is not apparent that the administrative law judge considered Dr. Cronau's assessment of plaintiff's mental impairments; he certainly did not give good reasons for the weight assigned to that assessment.

Because the administrative law judge failed to properly consider the evidence of plaintiff's claimed mental impairments, the Court concludes that the matter must be remanded for further consideration of that evidence.

It is therefore **RECOMMENDED** that the decision of the Commissioner be reversed and that the action be remanded to the Commissioner of Social Security for further consideration of the evidence relating to plaintiff's claimed mental impairments.

If any party seeks review by the District Judge of this *Report and Recommendation,* that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation,* specifically designating this *Report and Recommendation,* and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. §636(b)(1); F.R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. F.R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *Smith v. Detroit Federation of Teachers, Local 231 etc.,* 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Date: July 25, 2012                    *s/Norah McCann King*
                                       Norah McCann King
                                       United States Magistrate Judge